UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICK JOSEPH GROULX,

    *Plaintiff*

v.

CROP PRODUCTION SERVICES,
*n/k/a Nutrien AG Solutions*,

    *Defendant.*
_____/

CASE NO. 19-12560

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION ON DEFENDANTS MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S EMERGENCY MOTION TO COMPEL, PLAINTIFF'S MOTION FOR IMMIDIATE CONSIDERATION TO EXPLAIN EXHIBIT B-1, PLAINTIFF'S EMERGENCY MOTION FOR SUMMARY JUDGMENT, PLAINTIFF'S MOTION FOR ORDER, PLAINTIFF'S MOTION TO HAVE PLAINTIFF TREAT DEFENDANT AS A HOSTEL [SIC], PLAINTIFF'S MOTION TO EXPEDITE MOTION FOR ORDER, PLAINTIFF'S MOTION TO EXPEDITE, PLAINTIFF'S SECOND MOTION TO EXPEDITE, AND EMERGENCY MOTION TO EXPEDITE
(ECF Nos. 50, 52, 53, 56, 57, 58, 62, 63, 68, and 69)**

**I.**     **Recommendation**

*Pro se* Plaintiff Patrick Groulx originally filed this case in Bay County Circuit Court but the case was removed to this Court on August 30, 2019. (ECF No. 1.) Plaintiff's complaint centers around Defendant's alleged spraying of a neighboring property resulting in chemical drift to his own property that he asserts caused damage to his property, person, and livestock (bees). A previous Report and Recommendation (R&R) was adopted (ECF No. 38), leaving one remaining claim against Defendant: Count IV negligence.

Presently before the Court is Defendant's motion for summary judgment, (ECF No. 50), and several of Plaintiff's motions. (ECF Nos. 52, 53, 56, 57, 58, 62, 63, 68, and 69.) The Court has reviewed and considered the arguments in the motions, briefs, responses, and replies. (ECF Nos. 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, and 70.) For the reasons below, I **recommend** that the Court **GRANT Defendant's motion for summary judgment (ECF No. 50),** and **DENY Plaintiff's motions (ECF Nos. 52, 53, 56, 57, 58, 62, 63, 68 and 69) as MOOT**.

II.   Report

   A.   Plaintiff's Complaint

Plaintiff avers that

> In May of 2018 Plaintiff was on his own property at 2070 Houlihan Road in the township known as Spaulding which resides in the County known as Saginaw, and north of the property where he resides is a farm field of about 35 to 40 acres owned by PM Farms, LLC. On a certain day in that month of May of 2018 Plaintiff was sprayed with an herbicide by CROP PRODUCTION SERVICES (which changed their name in July of 2018 to Nutrien Ag Solutions)(See Exhibit A) that caused Erectile Dysfunction issues where Plaintiff could not have an orgasm for 14 days and the spray drifted onto Plaintiff's Honey Crisp Apple Tree burning 75% leaves causing serious injury (MCL 750.382)(See Exhibit-B).
>
> On May 19, 2019 Patrick-Joseph: Groulx was on his property attending his garden as his back is facing North where the field is at and directly behind his garden is a Big Red Farm Barn and he could smell a chemical, he stood up, walked east toward his house and turned north toward the field and as he turned, a plume of chemicals hit him and got into his mouth, lungs, eyes, nose and on to his skin. Patrick-Joseph: Groulx ran into the house because his eyes began burning and washed them out immediately, then immediately got into a car and traveled from Houlihan Road to Evon Road where the sprayer was refilling. When Patrick-Joseph: Groulx showed up at the location he confronted the individuals at the place where the sprayer was being refilled, Patrick was demanding to see the Material Safety Data Sheet (MSDS), the employer refused to speak to him and when Patrick

>Tagget (the owner of the land) showed up he (the owner of the land) told Nutrien Ag Solutions to go to the next field and refused to provide him with a MSDS sheet.
>
>After Patrick-Joseph: Groulx left the site he began having breathing problems and went to the emergency room at Saint Mary's in Saginaw where he was treated for chemical exposure, Patrick-Joseph: Groulx was given an anti-inflammatory and was put on a hand held breathing device while at the hospital, he was prescribed an anti-inflammatory and a breathing apparatus when discharged. (See Exhibit C).
>
>Throughout the week Patrick-Joseph: Groulx was still coughing periodically throughout each day and was suffering from headaches for 5 days, and again he had Erectile Dysfunctional issues again where he could not have an orgasm for 13 days, causing blood to be in his semen on the 14th day after exposure.

(ECF No.1, PageID.15-16.)

Based on these factual allegations, Plaintiff alleges the following remaining Count 4: "having no regards of wind direction and how wind works when spraying a carcinogen that got all over and in Plaintiff's body in May of 2018 that caused erectile dysfunction issues where Plaintiff could not have an orgasm for 13 days[.]" (ECF No. 1, PageID.18.)

Plaintiff seeks "a total of 1,424,125,000.00 (One Billion Four Hundred twenty-Four million One Hundred twenty-Five Hundred Thousand Dollars) with an annual interest rate of 13% compounded each month with 1% from the time of filing a Summons and Complaint for punitive damages and pain and injury." (ECF No. 1, PageID.22.) Plaintiff also seeks damages for harm done to endangered species of bees on his property. (ECF No. 70.)

  **B.** **Standard of Review - Motion for Summary Judgment**

3

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his or her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am.*

4

*Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Analysis

#### 1. Defendant's motion for summary judgment (ECF No. 50)

Defendant's motion for summary judgment contends that Defendant "did not breach any duties it may have owed Plaintiff" and instead "acted with reasonable care when applying herbicides, took several anti-drift precautions, and rescheduled applications on days that were too windy." (ECF No. 50, PageID.263.) Defendants further contend that "Plaintiff cannot produce any evidence – beyond his own statements, speculations, and conjecture – demonstrating otherwise." (*Id.* at PageID. 263-64.)

5

Defendant states that it "adheres to a written drift management plan to minimize the occurrence of off-target drift" and it provides the plan, which was signed by several pesticide applicators who attested that they had read the plan, on February 12, 2019, as an Exhibit. (ECF No. 50, PageID.264, 284-285.) In addition, Defendant proffered an affidavit from Edwin Benkert, Jr., location manager for Defendant at the Henderson Facility, who made a sworn declaration based on records he had reviewed, personal involvement with PM Farms, and discussions with the Henderson Facility employees who applied herbicides at PM Farms. (ECF No. 50, PageID.277-278.) Mr. Benkert stated that Defendant's drift management plan (ECF No. 50, PageID.284-286) requires that applicators use largest spray droplets to reduce off-target drift and that application is not done when wind speeds are over 15 miles an hour, extra caution is taken when winds are between 10-15 miles per hour, and that speeds between zero and 10 miles an hour are the best for application. (ECF No. 50, PageID.278.) Mr. Benkert indicated that on all three occasions when herbicides were applied to PM Farms, (May 7, 2018, May 19, 2019, and July 26, 2019), wind speeds were less than 10 miles an hour and that the wind was blowing either northeast or northwest which would be going away from Plaintiff's property. (ECF No. 50, PageID.278.) In addition, low-drift nozzle tips were used and "application pressure was reduced to low levels near the boundary between PM Farms and Plaintiff." (*Id.*) Mr. Benkert then goes on to describe, in detail, each application event, including days when Defendant chose not to make application because of wind speeds in excess of 10 miles per hour. (ECF No. 50, PageID.279-282.) Defendant also attaches the work orders for each of the relevant application events, the logs detailing weather conditions on those days, pictures of the

6

relevant properties and application rates used, and relevant pesticide inspection reports. (ECF No. 50, PageID.283-347.)

Plaintiff responds that he is "baffled on WHY DEFENDANT thinks a south wind is a north wind and vice versa?" because "the North wind comes from the NORTH not the SOUTH[.]" (ECF No. 51, PageID.349) (emphasis in original). Plaintiff also indicates that he has not yet found an attorney, discovery is on-going, and that Covid-19 may be "slowing my ability to see specialists at the U of M Hospital." (ECF No. 51, PageID.349.) Plaintiff also attaches an affidavit in support of his response detailing all of the issues he has experienced, e.g., voracious appetite, diarrhea, loss of sleep, tooth decay, belching, and loss of sex drive. (ECF No. 51, PageID.351-358.) Plaintiff also attaches safety data sheets for the relevant herbicides, (ECF No. 51, PageID.360-368, 372-407), hand-drawn maps of the relevant property, (ECF No. 51, PageID.370-371), and an affidavit from Carol Jean Groulx, Jonathon Joseph Groulx, and Erin Bunce wherein each confirms that Plaintiff has experienced the symptoms he describes. (ECF No. 51, PageID.409-418.)

As noted in the previous R&R, as to Plaintiff's remaining negligence claim, Michigan appears to recognize a neighboring landowner's duty to refrain from negligently spraying on one's own property in a manner than may cause chemicals to drift onto the neighboring property. *Burton v. Topacz*, No. 212627, 2000 WL 33407430 (Mich. Ct. App. Aug. 18, 2000) (presuming a duty owed to neighboring landowner not to spray in a negligent manner by ignoring wind conditions that caused the plaintiff to suffer aggravated asthma symptoms). The court assumed that this duty would extend to persons performing services on neighboring property, such as Defendant's spraying service.

7

However, at this summary judgment stage, it is not sufficient for Plaintiff to rest on his allegations. *Anderson,* 477 U.S. at 248. Instead, "to withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas,* 757 F. Supp. 2d at 492. Here, Defendant has properly supported its motion with evidence showing it operated pursuant to a drift management plan which was followed on the specific relevant dates, that plans to spray were aborted when winds made application inappropriate under the drift management plan and that application pressure was reduced when near the boundary of Plaintiff's property, i.e., Defendant has proffered substantial evidence that it acted without negligence. (ECF No. 50, PageID.278-347.) Plaintiff responds with evidence of his symptoms via his own affidavit and affidavits of those who know him; thus, he has presented evidence of damages. But he presents no evidence as to causation of these symptoms and he proffers no evidence showing that Defendant acted with any negligence. Without evidence of negligence or breach of duty, Plaintiff cannot meet his burden to survive a properly supported motion for summary judgment. *Cf.*, *Burton, supra* (directed verdict in favor of the defendant inappropriate where plaintiff provided evidence not only of the starting of her symptoms but also of drift being in excess of eight feet off the ground, spraying had occurred when the wind speed was over thirteen miles an hour, and that defendant had been given a cease and desist order due to improper spraying). Therefore, I recommend Defendant's motion for summary judgment be granted.[1]

---

[1] Although Plaintiff makes reference to the fact that the Covid-19 pandemic may be "slowing my ability to see specialists" (ECF No. 51, PageID.349), any such information would also appear to relate only to damages and, even if they could be persuasive on other issues, Plaintiff has not sought relief under Fed. R. Civ. P. 56(d).

8

      **2.**      **Plaintiff's motions (ECF Nos. 52, 53, 56, 57, 58, 62, 63, 68 and 69)**

Since I recommend that Defendant's motion for summary judgment be denied, I further recommend that Plaintiff's motions be denied as moot.

### III.   Conclusion

For the reasons above, I **recommend** that the Court **GRANT Defendant's motion for summary judgment (ECF No. 50) and DENY Plaintiff's motions (ECF Nos. 52, 53, 56, 57, 58, 62, 63, 68 and 69) as MOOT.**

### IV.   Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.

Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 22, 2020                         S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record and Plaintiff who is an e-filer.

Date: September 22, 2020                          By s/Kristen Castaneda
                                                  Case Manager